UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gerald D. Richter,

        Petitioner,                    Court File No. 18-cv-1879 (ECT/LIB)

v.

**REPORT AND RECOMMENDATION**

Lawrence A. Richter, et al.,

        Respondents.

       This matter came before the undersigned United States Magistrate Judge pursuant to an Order of referral from the Honorable Eric C. Tostrud, [Docket No. 22], made in accordance with the provisions of 28 U.S.C. § 636(b)(1), upon Respondent's Motion to Dismiss, [Docket No. 19], and upon Petitioner's Motion for Issuance of Writ of Mandamus with Declaratory Judgment Declaring All Judgments of Waldemar Senyk and Judgments Based Upon Senyk's Judgments Void Ab Initio Pursuant F.R.C.P. Rule 60(b)(1-6) & (d)(3). [Docket No. 29].

       On January 7, 2019, the Court established a briefing schedule for Respondent's Motion to Dismiss, as well as, for Petitioner's Motion for Issuance of Writ of Mandamus with Declaratory Judgment Declaring All Judgments of Waldemar Senyk and Judgments Based Upon Senyk's Judgments Void Ab Initio. (Order [Docket No. 34]). The Court held a Motions Hearing on February 13, 2019, and took Repondent's Motion to Dismiss, [Docket No. 19], and Petitioner's Motion for Issuance of Writ of Mandamus with Declaratory Judgment Declaring All Judgments of Waldemar Senyk and Judgments Based Upon Senyk's Judgments Void Ab Initio, [Docket No. 29], under advisement. (Minute Entry [Docket No. 45]).

For the reasons discussed herein, the Court recommends that Respondent's Motion to Dismiss, [Docket No. 19], be **GRANTED**, and Petitioner's Motion for Issuance of Writ of Mandamus with Declaratory Judgment Declaring All Judgments of Waldemar Senyk and Judgments Based Upon Senyk's Judgments Void Ab Initio Pursuant F.R.C.P. Rule 60(b)(1-6) & (d)(3), [Docket No. 29], be **DENIED**.

## I.   BACKGROUND AND STATEMENT OF FACTS[1]

The full factual background for this case is more fully summarized in In re Estate of Richter, No. A17-0916, 2018 WL 1145727 (Minn. Ct. App. Mar. 5, 2018), review denied (May 15, 2018). The pertinent facts for purposes of the present motion are as follows:

In January 2014, Gerald Donald Richter (hereinafter "Decedent") died. In re Estate of Richter, 2018 WL 1145727, at *2 (Minn. Ct. App. Mar. 5, 2018). Larry Richter became trustee of a living trust created by Decedent and informed his siblings that Decedent wished to divide the Richter Farm equally between them. Id. at *3.

In September 2014, Petitioner filed a probate action and a separate action in the State of Minnesota, District Court, Otter Tail County, (hereinafter "Minnesota State District Court") claiming express contract, implied contract, constructive trust, and unjust enrichment. Id. Petitioner later withdrew his claims for express and implied contract, and the Estate of Gerald Richter filed a counterclaim for money damages. Id. Petitioner's probate and contract actions were consolidated for trial. Id. Following a bench trial, the Minnesota State District Court made extensive findings of fact and conclusions of law and determined that the Estate of Gerald Richter

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the petition as true and construes them in the light most favorable to Petitioner. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

was not unjustly enriched and that Petitioner was not entitled to a constructive trust conveying him the entire Richter Farm. Id. The Minnesota State District Court awarded the Estate of Gerald Richter $28,135.41 from Petitioner for expenses related to the Richter Farm between 2014 and 2016. Id. at *2.

Petitioner subsequently appealed the Minnesota State District Court's judgment to the Minnesota Court of Appeals. On March 5, 2018, the Minnesota Court of Appeals affirmed the Minnesota State District Court's judgment. Petitioner then appealed to the Minnesota Supreme Court, which denied further review on May 15, 2018.

## II. RESPONDENT'S MOTION TO DISMISS. [DOCKET NO. 19].

Respondent moves the Court for an Order dismissing the Petition, [Docket No. 1], with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and alternatively, for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Resp.'s Mot. to Dismiss [Docket No. 19]).

### A. Standard of Review

#### Subject Matter Jurisdiction

Pro se complaints and pleadings are to be construed liberally. Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Id. (citing Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted)). However, "[p]ro se litigants are not excused from complying with court orders

or substantive and procedural law." Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988) (citing Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984)).[2]

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h). Here, Respondent argues that the Rooker–Feldman doctrine deprives the Court of subject matter jurisdiction over the suit. (Resp.'s Mem. [Docket No. 20]).

"The basis for the Rooker/Feldman doctrine is that, other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and by statute they are precluded from serving as appellate courts to review state court judgments, as that appellate function is reserved to the Supreme Court under 28 U.S.C. § 1257." Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005), cert. denied, 547 U.S. 1135 (2006). Rooker–Feldman bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corporation, 544 U.S. 280, 284 (2005), See also, Robins v. Ritchie, 631 F.3d 919, 925 (8th Cir. 2011) ("'[t]he basic theory of the Rooker–Feldman doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment'") (quoting Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 754 (8th Cir. 2010)).

---

[2] Because this Court finds that it lacks subject matter jurisdiction over the claims raised in the Petition, it recommends dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). Accordingly, the Court need not consider Respondent's Motion to Dismiss for insufficient pleading pursuant to Rule 12(b)(6).

**B. Analysis**

In the present case, Petitioner requests that this Court issue a Writ of Mandamus "granting Petitioner['s] demand that District Court Orders of Waldemar Senyk dated October 21, 2016, and April 11, 2017[,] be vacated and the matter be remanded and corrected to be in compliance with Federal and [Minnesota] law." (Petition, [Docket No. 1], at 3–4). Accordingly, Petitioner is here seeking federal appellate review of his recently-completed and unsuccessful state court case, that he has appealed twice in state court already, and he wants this Federal Court to overturn the State Court judgments rendered and affirmed in that case. However, such claims for relief are barred by the Rooker–Feldman doctrine.

Petitioner advances several different challenges to the Minnesota State Court judgments below which he contends are grounds for the relief he requests here from the Minnesota State District Court's judgment. All of the challenges advanced by Petitioner, however, were already considered and rejected by the Minnesota Court of Appeals, and the Petition for further review thereof was denied by the Minnesota Supreme Court.

Referring to the Richter Farm, Petitioner first argues that he was denied due process because he has a right "to be heard and present evidence on whether rent should be applied or required for 1999-2014 and the right to be heard as to the assessed value of the rent that is applied." (Petition, [Docket No. 1], at 9). He further argues that the Minnesota State District Court erred in its assessment valuation when it calculated the fair market rental value of the Richter Farm between the years 2003 and 2013. (Id.).

The Minnesota Court of Appeals, however, explicitly considered and rejected the foregoing argument in its decision dated March 5, 2018; instead holding that the fair rental value of the farmland assigned by the lower court was based on the facts in the record and that it saw no error

5

of law by the Minnesota State District Court. In re Estate of Richter, No. A17-0916, 2018 WL 1145727, at *3 (Minn. Ct. App. Mar. 5, 2018), review denied (May 15, 2018). Specifically, the Minnesota Court of Appeals stated:

> The district court determined that the fair rental value of the farmland was $6,630 per year. This finding was based on [Petitioner's] testimony regarding the actual rent paid to adjacent landowners for similar land under similar use. The fair rental value of the farm's buildings was deemed to be $24,000 per year, which was based on respondent's witness's uncontroverted testimony regarding United States Department of Agriculture data. The total fair rental value of the farm, then, was $30,630 per year. Between 1999 and the amendment of the trust in 2013, [Petitioner] benefited from approximately $444,135 in total forgiven rental costs. This figure does not include any accrued interest.
>
> The district court then calculated that decedent's net income in excess of $444,135 was $90,507, which falls short of the agreed-upon purchase price of $220,000. The district court noted that this figure would be further reduced by the fair rental value of decedent's livestock used by [Petitioner] in milk production. The district court's analysis is based on facts in the record and we see no error of law.

In re Estate of Richter, 2018 WL 1145727, at *3 (Minn. Ct. App. Mar. 5, 2018).

Petitioner also argues here that calculating the fair rental value for the years from 1999 to 2013 using 2014 rental values violated his due process rights, stating that no other case in Minnesota "has used fair market rent assessment from 15 years in the future and applied such as the arbitrary fair market analysis for the 15 years prior to the assessment. (Petition, [Docket No. 1], at 15). The Minnesota Court of Appeals, however, likewise addressed and rejected this argument as well, stating that:

> [Petitioner] argues that the rent values used by the district court are clearly erroneous because the district court effectively applied 2014 rents to past years (1999–2013). [Petitioner] did not submit evidence rebutting the determination of rents and the district court even relied on [Petitioner's] own evidence in construing the rent values, at least for the land. The district court's determination of rent value was not clearly erroneous.

In re Estate of Richter, 2018 WL 1145727, at *3 (Minn. Ct. App. Mar. 5, 2018).

Petitioner also argues that the transcripts of the bench trial at the Minnesota State District Court do not accurately reflect what happened at the court trial and argues that the Minnesota State District Court treated him with malice. (Petition, [Docket No. 1], at 15). This challenge, too, was raised on Petitioner's appeal to the Minnesota State Appellate Courts. See, In re Estate of Richter, 2018 WL 1145727, at *3 (Minn. Ct. App. Mar. 5, 2018).

Ultimately, the challenges made by Petitioner in the present case, both in his Petition and at the Motions Hearing, have been previously made and rejected by the Minnesota State District Court, the Minnesota Court of Appeals, and the Minnesota Supreme Court. Furthermore, based on both his papers and arguments at the Motions Hearing in this case, it is clear that all Petitioner has done in the present case is attempt to relitigate the same arguments that he did during his now-completed state court proceedings. By merely repeating his previously made arguments, it is clear that Petitioner is solely attempting to use this Court as an appellate court over his unsuccessful state court action. This is further evidenced by the specific relief sought by Petitioner—a remand of the Minnesota State District Court judgment with an order for the state court to alter its judgment.

Accordingly, because Petitioner's success in this Court depends on the Court reviewing and invalidating state court orders and resulting judgments, under the Rooker–Feldman doctrine, this Court has no subject matter jurisdiction over the petition here. Instead, because the petition for discretionary review submitted to the Minnesota Supreme Court was denied, Petitioner's sole remedy is to seek review by the United States Supreme Court. See, Ritchie, 631 F.3d at 925 (8th Cir. 2011) ("[t]he basic theory of the Rooker–Feldman doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision. . . .") (internal citations omitted).

7

Therefore, the undersigned hereby Recommends that the Respondent's Motion to Dismiss, [Docket No. 19], be **GRANTED**, and that the Petition here be dismissed with prejudice.[3]

### III. Attorney's Fees

In its Motion to Dismiss, Respondent also seeks as a sanction attorney's fees from Petitioner and an injunction. (See, Mem. in Supp., [Docket No. 20], at 10). The Federal Rules of Civil Procedure require that pleadings submitted by pro se parties "must be signed . . . by a party personally." Fed. R. Civ. P. 11(a). The purpose of this requirement is to:

> certif[y] to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 also provides for sanctions. See, Fed. R. Civ. P. 11(c).

---

[3] In his Memorandum of Law in Support of Motion for Issuance of Writ of Mandamus Declaring All Judgments of Waldemar Senyk and All Judgments Made in Furtherance of Judgments of Waldemar Senyk as Void Ab Initio, [Docket No. 30], Petitioner argues for the first time that Judge Waldemar Senyk and the State of Minnesota lacked subject matter jurisdiction to enter judgment against him. Petitioner's understanding of subject matter jurisdiction, however, is patently wrong. Rather, at the February 13, 2019, Motions Hearing, Petitioner acknowledged that he was a citizen of Minnesota, that the Decedent was a citizen of Minnesota, that the living trust created by Decedent was formed in Minnesota, that the Decedent passed away in Minnesota, and that the Richter Farm was located in Minnesota. (February 13, 2019, Motion Hearing, Digital Recording at 1:45–1:50 p m.). Thus, on its face, it appears that the State of Minnesota had subject matter jurisdiction. See, In re Estate of Strub, 907 N.W.2d 676, 678 (Minn. Ct. App. 2018) (finding that Minnesota district courts have "jurisdiction over all subject matter relating to estates of decedents" where the decedent was a Minnesota resident). Moreover, Petitioner here was the Plaintiff who initiated the state court proceedings about which he now complains, which is a clear acknowledgment by Petitioner of his prior belief that the Minnesota state courts had subject matter jurisdiction.

However, Rule 11 sets certain procedural requirements prerequisite for motions seeking sanctions:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).

In the present case, Respondent has not made a separate motion for Rule 11 sanctions—as the Rule requires. This procedural deficiency, by itself, provides this Court with sufficient grounds to recommend that Respondent's request for Rule 11 sanctions be denied. See, Thelen v. City of Elba, No. 08-cv-1150 (JNE/JJG), 2010 WL 3515591, at *1 (D. Minn. July 13, 2010) ("Rule 11(c)(2) states that a motion for Rule 11 sanctions 'must be made separately from any other motion[.]' Here, the defendants combined their Rule 11 and § 1988 arguments in a single motion, so they cannot obtain relief under Rule 11.").

Additionally, Respondent has not demonstrated that it served its request for Rule 11 sanctions on Petitioner at least twenty-one (21) days before filing it with the Court, as required by Rule 11. Again, this procedural deficiency, by itself, provides the Court with sufficient grounds to recommend that Respondent's request for Rule 11 sanctions be denied. See, Fearing v. City of Lake St. Croix Beach, No. 04-cv-5127 (JNE/SRN), 2006 WL 2827250, at *1 (D. Minn. Sept. 28, 2006).[4]

---

[4] The Court believes compliance with this "safe harbor" provision is particularly important when Rule 11 sanctions are sought against a pro se party.

Furthermore, even assuming merely for the sake of argument Respondent's request for Rule 11 sanctions was not procedurally deficient, Respondent has not made any record before this Court to demonstrate what reasonable attorney's fees would be in the present case.

Consequently, to the extent Respondent seeks Rule 11 sanctions against Petitioner in the form of attorney's fees or an injunction, the Court recommends that Respondent's request be **DENIED**.

### III.   CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss, [Docket No. 19], be **GRANTED in part, and DENIED in part**, as set forth above;

2. Petitioner's Motion for Issuance of Writ of Mandamus with Declaratory Judgment Declaring All Judgments of Waldemar Senyk and Judgments Based Upon Senyk's Judgments Void Ab Initio Pursuant F.R.C.P. Rule 60(b)(1-6) & (d)(3), [Docket No. 29], be **DENIED**; and

3. Petitioner's Petition, [Docket No. 1], be **DISMISSED with prejudice**.

Dated: March 11, 2019					s/Leo I. Brisbois
							The Honorable Leo I. Brisbois
							United States Magistrate Judge

# **N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).